## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HOPKINTON DRUG, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CAREMARKPCS, L.L.C. AND CVS CAREMARK CORP.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　CIVIL ACTION NO.<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT AND JURY DEMAND

### Nature of Action

This is an action for injunctive relief and monetary damages brought by an independent pharmacist against a nationwide operator of pharmacies and its corporate affiliate, a pharmacy benefits manager, arising out of the Defendants' breaches of contract, unlawful conspiracy and unfair and deceptive practices. Because the Plaintiff is threatened with immediate and irreparable harm, immediate injunctive relief is sought.

### Parties

1.　　The Plaintiff, Hopkinton Drug, Inc. ("Hopkinton Drug"), is a duly organized Massachusetts corporation having a principal place of business in Hopkinton, Middlesex County, Massachusetts.

2.　　The Defendant, CaremarkPCS, L.L.C., d/b/a CVS Caremark ("CVS Caremark") is a corporation having principal places of business in Irving, Texas and Scottsdale, Arizona.

3.　　The Defendant, CVS Caremark Corp. ("CVS"), is a corporation having principal places of business in Woonsocket, Rhode Island, Irving, Texas and Scottsdale, Arizona.

## Jurisdiction and Venue

4.     This Court has subject matter jurisdiction over this matter pursuant to the provisions of 28 U.S.C. § 1332, as there is diversity of citizenship of the parties and an amount in controversy in excess of $75,000.

5.     This Court has personal jurisdiction over the Defendants pursuant to the provisions of Mass. G.L. c. 223A, § 3.

6.     Venue is appropriate before this Court pursuant to the provisions of 28 U.S.C. § 1291.

## Underlying Facts

7.     At all times relevant hereto, Hopkinton Drug has served as an independent pharmacy, located in Hopkinton, MA.  Founded in 1954, Hopkinton Drug is the only pharmacy located in Hopkinton.

8.     Hopkinton Drug is a full-service retail community pharmacy, with a specialty in compounded pharmaceuticals, preparing on a prescription-by-prescription basis compounded medications for patients who cannot take standard prescriptions.  Compounded medications are medically necessary for any of the following reasons:

     a.     Standard prescriptions are unavailable to address a patient's particular condition.

     b.     The patient is unable to ingest a standard prescription, due to sensitivity to excipients, dyes, preservatives, etc.

     c.     The dosage of the standard prescription is inappropriate for the patient.

       d.      The patient is unable to swallow a standard medication that is in pill or capsule form.

       e.      To avoid otherwise avoidable medical complications and side effects.

9.      Hopkinton Drug has built its business on the reputation of its excellent performance, service and results in the field of compounded medications, particularly in addressing Lyme Disease and mold issues.  Dennis Katz, President of Hopkinton Drug and its chief pharmacist, is a member of the Massachusetts Independent Pharmacy Association, the National Community Pharmacy Association, the International Academy of Compounding Pharmacists and the Professional Compounding Centers of America.  Physicians from within and outside Massachusetts have regularly directed their patients to Hopkinton Drug to satisfy their compounding needs based upon Plaintiff's excellent reputation.  Hopkinton Drug does not do any "bulk" manufacturing of compounded pharmaceuticals.

10.      At all times relevant hereto, CVS has been a nationwide operator of pharmacies under the CVS trade name.  At all times relevant hereto, CVS has been expanding its national footprint, in part through the acquisition of independent pharmacies.  CVS is presently the second largest pharmacy chain in the United States, with more than 7600 pharmacy locations.

11.      At all times relevant hereto, CVS Caremark has been a corporate affiliate of CVS, serving as a pharmacy benefits manager ("PBM").

12.      As a result of a corporate merger in 2006, CVS and CVS Caremark became affiliates of one another.

13.      Beginning in or around 1995, Hopkinton Drug entered into a provider agreement (the "Provider Agreement") with PCS Health Systems, Inc., a true and authentic copy of which is appended hereto as Exhibit 1, pursuant to which Hopkinton Drug agreed to fill prescriptions for

members of health plans for which CVS Caremark serves as a Pharmaceutical Benefits Manager ("PBM").

14.    Beginning in or around 2007 and at all times relevant since, CVS Caremark has been the successor-in-interest to PCS Health Systems, Inc. under the Provider Agreement.

15.    Approximately 28 per cent of the clientele of Hopkinton Drug are covered by health insurance plans, with prescription coverage, for which CVS Caremark serves as a PBM.

16.    On or about June 23, 2014, CVS Caremark issued a notice (the "Notice") to Hopkinton Drug, a true and authentic copy of which is appended hereto as Exhibit 2, in which CVS Caremark purported to terminate Hopkinton Drug.  The Notice stated in pertinent part as follows:

> "Over the last few months, representatives of CVS Caremark have been in contact with you regarding your pharmacy's audit.  As a result of the unresolved discrepancies, the CVS Caremark Pharmacy Membership Review Committee (PMRC) has examined your audit history and other aspects of your pharmacy's performance.  After careful review, the PMRC has concluded that your pharmacy is not in compliance with your CVS Caremark Provider Agreement." (emphasis added)

17.    The notice was incorrect for the following reasons:

a.    CVS Caremark had conducted a formal audit of Hopkinton Drug in April 2013, more than 14 months before the Notice, raising for the first time the issue of Hopkinton Drug's sale of prescription drugs into states in which it was not licensed.  Promptly upon the issue being raised, Hopkinton Drug ceased the sale of pharmaceuticals into states in which it was not licensed, and otherwise took steps to apply for and obtain licenses to sell pharmaceuticals into a number of other states.

b.    At all times since April 2013, Hopkinton Drug has not sold any prescription drugs into states in which it was not licensed.  Hopkinton Drug has received prescriptions from out-of-state doctors where it has not been licensed, and Hopkinton

Drug has required that the patient in question authorize a Massachusetts courier agent to personally accept the medication on behalf of the patient at Hopkinton Drug's place of business in Hopkinton, MA, a practice fully permissible under the relevant laws, and fully disclosed to CVS Caremark. Indeed, at all times relevant hereto, Caremark has been knowingly making reimbursement to Hopkinton for pharmaceuticals delivered to authorized couriers.

      c.     Hopkinton Drug and CVS Caremark were parties to an arbitration proceeding arising out of CVS Caremark's action in sequestering over $700,000 in funds otherwise due to Hopkinton Drug as a result of sales of pharmaceuticals to states in which Hopkinton Drug was not licensed prior to April 2013. As a result of the arbitration proceeding, an award was entered on May 30, 2014 to the effect that CVS Caremark had sequestered a larger amount of Hopkinton Drug's funds than was permitted under the Provider Agreement, and further entitling Hopkinton Drug as prevailing party to over $100,000 in attorneys' fees and costs.

      d.     Since April 2013, CVS Caremark had never made any issue of any actions of Hopkinton Drug, and in particular, had not raised any issue at all with any sales of Hopkinton Drug of pharmaceuticals to out-of-state patients who accepted delivery of their prescriptions in Massachusetts their authorized agents. To the contrary, CVS Caremark was regularly making reimbursement to Hopkinton Drug for such sales.

    18.     Accordingly, contrary to the terms of the Notice, there were no "unresolved discrepancies". Moreover, there was no basis for CVS Caremark's conclusion that Hopkinton Drug "is not in compliance" with the Provider Agreement.

19.     Pursuant to the terms of the Notice, not only is CVS Caremark purporting to terminate Hopkinton Drug's rights under the Provider Agreement, but the termination is to be for a minimum of five years.

20.     Hopkinton Drug will be immediately and irreparably harmed unless this Court enjoins CVS Caremark from terminating Hopkinton Drug under the Provider Agreement. Approximately 28% of Hopkinton Drug's clientele are insured through health plans, covering prescription medications, for which CVS Caremark is the PBM.  Thus, Hopkinton Drug is threatened with the loss of a very substantial portion of its customer base, as the patients in question will be forced to go elsewhere for their pharmaceutical needs if Hopkinton Drug cannot be reimbursed for filling their prescriptions.

21.     Because Hopkinton Drug is a full service pharmacy providing other goods and services in addition to medications, Hopkinton Drug also is threatened with the loss of this revenue stream from 28% of the clientele who are covered by plans for which CVS Caremark is the PBM.

22.     Hopkinton Drug will be forced to lay off 40-50% percent of its 48-person workforce as a result of this loss of business.

23.     CVS Caremark will not be harmed in any way if enjoined.  There has never been any reported incident with respect to any of the prescriptions sent out of state by Hopkinton Drug.  To the contrary, physicians from out-of-state have consistently referred new patients to Hopkinton Drug for their prescription needs for compounded medications, particularly to address Lyme Disease and mold issues.

24.     The public interest is best served by the granting of injunctive relief.  The residents of Hopkinton who rely on Hopkinton Drug and who are insured through plans for

which CVS Caremark is the PBM will have to go elsewhere for their prescription and related needs. Moreover, the hundreds of patients who rely on Hopkinton Drug for their compounded medications and who are covered under plans for which CVS Caremark as the PBM will not be well served, as they will also have to find other sources for their regular and compounded medications, sources that may well not attend to their medical needs as well as Hopkinton Drug.

### Count I:  Breach of Contract vs. CVS Caremark

25.     Paragraphs 1-24 are incorporated herein and made a part hereof.

26.     By virtue of its action in issuing the Notice to Hopkinton Drug without proper cause, and indeed based upon mistruths, CVS Caremark has breached its contractual obligations to Hopkinton Drug.

27.     As a direct and proximate result thereof, Hopkinton Drug is threatened with immediate and irreparable harm.

### Count II:  Breach of Covenant of Good Faith and Fair Dealing vs. CVS Caremark

28.     Paragraphs 1-27 are incorporated herein and made a part hereof.

29.     Implied in the Provider Agreement under the governing law is the covenant of good faith and fair dealing.

30.     The action of CVS Caremark in purporting to terminate Hopkinton Drug without proper cause, and based upon mistruths, and on information and belief, improperly prompted to retaliate against Hopkinton Drug as a result of its award as the prevailing party in the Arbitration, constitutes a breach of the covenant of good faith and fair dealing.

31.     As a direct and proximate result thereof, Hopkinton Drug is threatened with immediate and irreparable harm.

### Count III:  Breach of Any Willing Provider Act vs. CVS Caremark

32.     Paragraphs 1-31 are incorporated herein and made a part hereof.

33.     Pursuant to the provisions of Mass. G.L.c. 176D, §3B, the Massachusetts "Any Willing Provider Act", CVS Caremark is required to accept into its network any provider of pharmaceutical services who is willing to comply with the applicable contractual terms.

34.     Hopkinton Drug is a provider of pharmaceutical services willing to comply with the contractual terms of the Provider Agreement.

35.     The actions of CVS Caremark in purporting to terminate Hopkinton Drug without proper cause, and indeed based upon mistruths, is a violation of the Any Willing Provider Act.

36.     As a direct and proximate result thereof, Hopkinton Drug is threatened with immediate and irreparable harm.

### Count IV:  Unlawful Civil Conspiracy vs. CVS Caremark and CVS

37.     Paragraphs 1-36 are incorporated herein and made a part hereof.

38.     Through its real estate division, CVS has made repeated inquiries with Hopkinton Drug to buy out Hopkinton Drug's business and related real estate, as exemplified by correspondence appended hereto as Exhibit 3.  Those inquiries have been spurned by Hopkinton Drug, which fully intends to carry on its six decade tradition of service in the Hopkinton area.

39.     Despite being the second largest pharmacy claim in the U.S., and despite its clear interest in locating a store in Hopkinton, CVS has not otherwise located a pharmacy in Hopkinton.

40.     On information and belief, CVS has improperly conspired with CVS Caremark to target Hopkinton Drug for the purpose of injuring Hopkinton Drug.  Specifically, the Defendants

have conspired to cause CVS Caremark to sequester substantial funds otherwise due to Hopkinton Drug and to thereafter issue the Notice, all to cause injury to Hopkinton Drug.

41.     CVS Caremark and CVS have unlawfully conspired with one another to injure Hopkinton Drug, all to benefit CVS's efforts to enter into a market in which it is not presently located.

42.     As a direct and proximate result thereof, Hopkinton Drug is threatened with immediate and irreparable harm.

### Count V:  Unfair and Deceptive Practices vs. CVS Caremark and CVS

43.     Paragraphs 1-42 are incorporated herein and made a part hereof.

44.     The parties hereto are engaged in trade and commerce within the meaning of Mass. G.L. c. 93A, § 2.

45.     The actions of the Defendants as described above constitute unfair and deceptive trades and practices violative of Chapter 93A of the Massachusetts General Laws.

46.     The actions of the Defendants as described above have taken place primarily and substantially in Massachusetts, as the sequestration was of funds due to be paid to Massachusetts, the Notice was issued into Massachusetts, and the resulting harm to Hopkinton Drug would take place in Massachusetts.

47.     The actions of the Defendants as described above were knowingly and willfully committed.

48.     As a direct and proximate result thereof, Hopkinton Drug is threatened with immediate and irreparable harm.

## Prayers for Relief

WHEREFORE, Hopkinton Drug, Inc. respectfully requests that this Court:

1. Issue a Temporary Restraining Order, restraining CVS Caremark, its shareholders, directors, officers, agents and employees of and from effectuating the termination of the Provider Agreement and from depriving Hopkinton Drug of any of its rights under the Provider Agreement;

2. Issue a Preliminary Injunction, enjoining CVS Caremark, its shareholders, directors, officers, agents and employees of and from effectuating the termination of the Provider Agreement and from depriving Hopkinton Drug of any of its rights under the Provider Agreement;

3. Issue a Permanent Injunction enjoining CVS Caremark, its shareholders, directors, officers, agents and employees of and from effectuating the termination of the Provider Agreement and from depriving Hopkinton Drug of any of its rights under the Provider Agreement;

4. Award Hopkinton Drug damages pursuant to Counts IV and V of the Complaint, with the amount to be trebled pursuant to Count V;

5. Award Hopkinton Drug interest, costs and reasonable attorneys fees; and

6. Grant such other relief as may be deemed just and appropriate.

## Jury Demand

Plaintiff demands a trial by jury on all claims and issues so triable.


Respectfully submitted,

Hopkinton Drug, Inc.
By its Attorneys,


/S/  Lawrence G. Green
Lawrence G. Green, Esq. (BBO # 209060)
lgreen@burnslev.com
Christopher L. Ayers, Esq. (BBO #672076)
cayers@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA  02110
Tel:  617-345-3000
Fax: 617-345-3299

Dated:  June 30, 2014

## VERIFICATION

I        , Dennis Katz, hereby depose and say that I am President of the Plaintiff, Hopkinton Drug, Inc., that I have reviewed the foregoing Verified Complaint, and that the averments set forth therein are true to the best of my knowledge and belief.

Signed under the pains and penalties of perjury this _30_ day of June, 2014.

_Dennis Katz_

4828-5738-6268.1